IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF: ) | CASE NO. BK13-40219-TJM |
| ) | |
| SANDPOINT CATTLE COMPANY, LLC, ) | CH. 11 |
| ) | |
| Debtor(s). ) | |

ORDER

      A final hearing was held in Lincoln, Nebraska, on February 27, 2013, regarding Fil. #16, Motion Seeking an Order Authorizing the Use of Cash Collateral and Granting of Adequate Protection, filed by the debtor and Fil. #25, Objection to Emergency Motion Seeking an Order Authorizing the Use of Cash Collateral and Granting of Adequate Protection, filed by Alger Cattle Company, LLC. Robert Craig and Anna Bednar appeared for the debtor and James Overcash and Frank Mihulka appeared for Alger Cattle Company, LLC.

      The debtor operates a commercial cattle business. It has a cow-calf herd and raises and sells bulls. It filed for Chapter 11 protection on February 6, 2013. It requests the use of cash collateral, that is, the proceeds of the sale of bulls in February of 2013 in the amount of $1,069,907.00 plus proceeds of the sale of animals during the next few months, plus the proceeds of an insurance policy. The time period requested for use of the cash collateral is from February 6 through the week of June 16, 2013. Alger Cattle Company, LLC, has a lien on the cattle, proceeds, and all other personal property. It objects that its interest in the collateral is not adequately protected if debtor is allowed to use the sale proceeds.

      In support of its motion, the debtor submitted Fil. #45, identified as a weekly cash flow projection. The projection must be reduced by $125,000.00 for the week of May 5, 2013, and $5,656.00 for the week of May 19, 2013, because of addition errors. After such reduction, the total estimated cash receipts for the period is $1,539,757.00 instead of $1,670,413.00. Assuming all the expense numbers are correct, the Estimated Cumulative Discretionary Cash Flow, the bottom line on Fil. #45, is $99,985.00 rather than $230,640.00 at the end of the period following the June 16, 2013, week.

      Exhibit 5 to Fil. #46 is the January 31, 2013, report of a number of animals in the herd and the total value of the herd. It shows 3,812 head valued at $5,229,200.00.

      Fil. #49, the "demonstrative exhibit," shows herd numbers and herd values on a monthly basis over the years 2009 through 2012 plus the month of January 2013. It shows the four-year average per month value for February and thereafter with January 2013 included for the January monthly average. However, the reality is that $1,069,907.00 worth of cattle were sold in February 2013. To determine the February 2013 average value, without more information on the number of head added during February, the $1,069,907.00 must be subtracted from the January actual value to obtain the February number to be used for the five-year average. That February number is $4,159,293.00. With it, the average for February is $5,257,468.00. The difference between the January average of $5,261,090.00 and the February average of $5,257,468.00 is a negative

$3,662.00, not a positive $302,813.00 as shown on Fil. #49. Because of the reduction in the herd size resulting from the February 2013 sales, it is likely that the increases in the herd's value going forward will not reach the increases shown in the last column of Filing 49.

It is pure speculation to attempt to determine the average increase or decrease in the herd's value between now and June 16, 2013, because there is no evidence of the future market value of the cows or the bulls and no evidence of the actual number of animals at the end of February 2013.

Exhibit #49 uses a four-year average to determine monthly herd values. Those average values for the next several months are significantly higher than the five-year average for February and there is no evidence that such significantly higher value can be attained or maintained.

The obligation of the debtor is to adequately protect the value of the collateral on the petition date. The Bankruptcy Code "specifically ensures the protection of a secured creditor's assets against any decrease in value from the beginning of the automatic stay, and, because the stay is instituted the moment the petition is filed, the protection from depreciation also begins at that moment." Chase Manhattan Bank USA NA v. Stembridge (In re Stembridge), 394 F.3d 383, 387 (5th Cir. 2004). "This is the tradeoff the automatic stay creates for creditors and debtors: creditors are prevented from seizing their secured assets in order to provide debtors with 'breathing room' to reorganize; in return, the creditors' present value is preserved throughout the reorganization through adequate protection (and priority of its claim)." Id. The closest date to the petition date for which there is evidence of value is January 31, 2013. Fil. #49 shows the value of the herd on that date was $5,229,200.00. The value in February is reduced by the February sale proceeds, which is the money debtor wants to use for operations between now and June 2013. The petition date value is not being protected under the proposal, even if the third-party contribution of $200,000 is made available.

IT IS ORDERED that the motion for use of cash collateral, Fil. #16, is denied.

DATED:     March 1, 2013

> BY THE COURT:
>
> /s/ Timothy J. Mahoney
> United States Bankruptcy Judge

Notice given by the Court to:
   *Robert Craig
   *Anna Bednar
   James Overcash
   Frank Mihulka

* Movant is responsible for giving notice of this order to all other parties not listed above if required by rule or statute.