## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| In re: Sandpoint Cattle Company, LLC, | Bankr. No.: 13-40219 |
| Debtor. | Chapter 11 |

## MEMORANDUM AND ORDER APPROVING IN PART AND DISAPPROVING IN PART THE FINAL APPLICATION FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES AND ORDERING PARTIAL DISGORGEMENT OF FEES

Robert F. Craig, P.C., d/b/a Craig/Bednar Law, P.C. ("Craig/Bednar Law")[1] filed a Final Application for Allowance of Compensation and Reimbursement of Expenses under 11 U.S.C. § 331 on August 27, 2014.  Doc. 629.  Craig/Bednar Law seeks an award of $519,736.20 in fees and $23,971.51 in costs. Id. at ¶ 8. It also filed an addendum to the fee application seeking $2,469.00 for the cost of preparing the fee application.

In its application, Craig/Bednar Law represented that Sandpoint Trucking Company, LLC paid it a retainer of $25,000 on January 31, 2013.  Various entities paid

---

[1] Robert F. Craig and Anna Bednar are the only attorneys that practice with Craig/Bednar Law.  Craig is the senior member of the firm and assumed the lead counsel role in all the firm's cases, including this case.  At trial, Craig testified that Anna Bednar is an associate attorney that is employed by the firm.  In his declaration dated April 19, 2013, he represented that Bednar was his partner and that she had approximately 12 years of experience practicing in the area of Chapter 11 bankruptcy law representing debtors.

Craig graduated from the University of Notre Dame in 1970 with a bachelor's degree in business and earned a law degree from Creighton University in 1973.  After graduating, Craig worked for the Kennedy Holland law firm.  He began working on bankruptcy cases in his first year of practice.  In addition to the clients he served in private practice, Craig worked as a trustee for a number of years.  Since the early 1980s, he has focused his practice on representing debtors in Chapter 11 bankruptcy cases.

Craig/Bednar Law a total sum of $484,178.14 for legal fees and costs.  Id.  Specifically,

Debtor Sandpoint Cattle Company, LLC paid $109,498.14, Clark A. Compher, Jr.

advanced $309,680.00 for payment of legal fees and costs and Sandpoint Trucking

Company advanced $65,000.00 for payment of legal fees and costs.  Id.  Craig/Bednar

Law requests the Court approve an administrative expense in the amount of

$546,176.71, from which Sandpoint will repay the advances from Compher and

Sandpoint Trucking Company.

Sandpoint and Alger Cattle Company, LLC and Raymond and Mary D. Alger, as

Trustees of the R. and M. Alger Family Trust (collectively, "Alger"), each filed an

objection to the final application for fees and expenses.  Doc. 640; Doc. 642.  Compher

and George Londos joined in Sandpoint's objection.  Doc. 641.  The Court consolidated

trial of the final application for compensation and reimbursement of expenses with trial

of Sandpoint's malpractice action against Robert Craig, Craig/Bednar Law and Anna

Bednar in adversary proceeding 14-4052.  Compher and Londos did not offer evidence

or argue in support of their objection or joinder in Sandpoint's objection at the trial.

Alger withdrew his objection on February 4, 2015.  Doc. 764.  The Court incorporates by

reference the findings of fact and conclusions of law in its Memorandum and Order filed

July 22, 2016 in adversary proceeding 14-4052.  See Doc. 697.

## I.    Background

Craig/Bednar Law filed a Disclosure of Compensation of Attorney for Debtor on

February 13, 2013.  Doc. 13.  In the disclosure, Craig/Bednar Law certified that it

accepted $25,000 for services rendered on behalf of Sandpoint in contemplation of or in

connection with the bankruptcy case, checking boxes indicating that the source of

compensation was both "Debtor" and "Other (specify) – Unknown at this time."  Id.  At

the January 2016 trial, Compher testified that he paid the retainer.[2]

Sandpoint filed an application to employ Craig/Bednar Law on February 15,

2013.  Doc. 21.  In its application, Craig/Bednar Law represented:  "Debtor has agreed

to pay the actual fees and expenses incurred by the Firm from property of the estate as

allowed by the Court and, potentially, from third parties. . . . The Firm received $25,000

from Debtor by way of wire transfer on the 31st day of January, 2013[.]"  Id. at 4.  The

Court[3] granted Sandpoint's application to employ Craig on February 28, 2013.  Doc. 54.

Also on February 15, 2013, Sandpoint filed a Motion to Approve Procedures for

Interim Compensation and Reimbursement of Professional Fees.  Doc. 23.  It sought

entry of an administrative order establishing procedures for interim compensation and

---

[2] Compher is a voting member of Sandpoint.  Due to numerous capital contributions, Compher's membership interest in Sandpoint was approximately 90 percent by the time of the January 2016 trial.

In addition to Craig/Bednar Law's retainer, Compher paid trade creditors in full before Sandpoint filed its bankruptcy petition.  On December 21, 2012 (less than sixty days before it petitioned for bankruptcy relief), Sandpoint issued a payment to Compher in the sum of $201,667 to "payback feed note."

At the January 2016 trial, Craig testified that his "most frequent contact" was with Compher.  He recalled discussing various business plan options with Sandpoint principals, including John Widdowson and Compher.  Although Widdowson was Sandpoint's sole managing member and one of only two people on its Board of Managers, Compher apparently exercised the power to reject his suggestions regarding the operation of the business.  During discussions about Sandpoint's business plan options and bankruptcy exit strategy, Widdowson suggested Sandpoint "bring in" another rancher from Oklahoma or find an investor who would agree to a sale and leaseback.  Compher rejected both of these ideas.  Craig testified that Sandpoint representatives also spoke about a large cattle sale, but this idea was rejected as well.  Craig recalled Compher complaining that Widdowson suggested reorganization ideas but did not consider costs such as moving cattle or renting land.

[3] Hon. Timothy J. Mahoney presided over this case until January 15, 2014.

reimbursement of expenses on the following basis and subject to the following

restrictions:

1.      The professionals will provide monthly fee and expense statements to the parties entitled to service under Rule 2002(i) of the Rules of Bankruptcy Procedure including Debtor, the U.S. Trustee, counsel to the Creditors' Committee (if one is appointed), and those creditors and equity security holders who serve on the Debtor and file a request that all notices be mailed to them (the "Reviewing Parties").

2.      If none of the Reviewing Parties objects in writing filed with the Court within five (5) days of the mailing of the monthly fee and expense statement, then 80% of the professional fees for services rendered by such professional, and 100% of the professional's out-of-pocket expenses, shall be paid on a monthly basis.

3.      If written objection is received and filed with the Court within five (5) days, then a hearing will be held to resolve the objection(s) to the monthly fee and expense statement, unless resolved by agreement prior thereto.

4.      Once the 5-day time period passes without an objection being filed, or once an objection is resolved by agreement or by this Court, then payment of the allowed fees and expenses shall be due and payable.

5.      The professionals shall not be paid unless the estate is current on post-petition taxes and Trustee's fees, and unless the estate is current on payments to post-petition creditors or has the financial capacity to make such payment.

6.      The professionals shall file interim fee applications at 120-intervals [sic].

7.      Upon the approval of such interim applications, the Trustee or Debtor shall pay the 20% hold-back to the professionals.

8.  All payments will be subject to court approval of a final fee application filed by the professionals.

9.  The professionals acknowledge that any order authorizing payment of fees and reimbursement of expenses under the conditions set out herein, or any others imposed by this Court, shall not constitute a waiver by the United States Trustee of any right to comment or to make objection(s) to any fees or expenses for which court approval is sought by professionals.

Id.  The Court granted the motion on March 26, 2013.  Doc. 90.

Pursuant to the procedures for interim compensation and reimbursement of expenses, Craig/Bednar Law filed a Declaration of Robert F. Craig in Support of March Legal Fees on April 19, 2013.  Doc. 101.  The next day Craig/Bednar Law filed statements of fees and expenses for February 2013 in the sum of $32,186 (Doc. 102)[4] and for March 2013 in the sum of $44,335.51 ($43,020.60 for legal services and $1,314.91 for expenses) (Doc. 101-2; Doc. 103).

Alger objected to Craig/Bednar Law's attorney's fees and expenses, claiming that Sandpoint failed to serve "Debtor's Attorneys' Fees and Expenses for March 2013" on Alger's counsel in accordance with the Procedure for Interim Compensation and Reimbursement of Professional Fees approved by the Court.  Doc. 100.  Alger also complained that these procedures did not allow sufficient time for proper review of the fees or for comparison of the requested amount to the projections in the cash collateral plan.  Doc. 95.  In addition, Alger argued that the proposed legal fees and expenses Sandpoint requested for March 2013 exceeded Sandpoint's cash flow projections (Doc. 77-1) offered in support of its Second Motion for Use of Cash Collateral (Doc. 63) by 174 percent.  Doc. 100.  Alger explained that Sandpoint projected $25,500 in legal fees and expenses for March, but Craig/Bednar Law's fees and expenses totaled $44,335.51.  Sandpoint did not amend its projections.

On April 24, 2013, the Court ordered:

Fees are allowed in the amount of $25,000.00 and expenses of $1,314.91 for March 2013.  Th [sic] remainder of the request is deferred until reviewed after the 120 day filing and notice.  The reason for the smaller amount at

_____

[4] According to the letter Craig/Bednar Law sent to the Reviewing Parties, the fees and expenses for February 2013 totaled $5,955.82 ($5,832 for legal services and $123.82 for expenses).  Doc. 101-1.

this time is the failure to serve the fee statement on counsel for Alger and the fact that the fee statement amount exceeded the budget."

Doc. 104.

On May 3, 2013, Craig/Bednar Law filed a statement of fees and expenses for April 2013 in the sum of $11,072.98 ($10,835 for legal services and $237.98 for expenses).  Doc. 110.  Pursuant to procedures approved by the Court, 80 percent of fees ($8,668) and 100 percent of expenses ($237.98) became payable to Craig/Bednar Law absent any objection.  No one filed an objection.

On June 3, 2013, Craig/Bednar Law filed a statement of fees and expenses for May 2013 in the sum of $30,704.78 ($30,484 for legal services and $220.78 for expenses).  Doc. 117.  Pursuant to procedures approved by the Court, 80 percent of fees ($24,387.20) and 100 percent of expenses ($220.78) became payable to Craig/Bednar Law absent any objection.  No one filed an objection.

On July 2, 2013, Craig/Bednar Law filed a statement of fees and expenses for June 2013 in the sum of $29,493.67 ($28,208 for legal services and $1,285.67 for expenses).  Doc. 163.  Pursuant to procedures approved by the Court, 80 percent of fees ($22,566.40) and 100 percent of expenses ($1,285.67) became payable to Craig/Bednar Law absent any objection.  No one filed an objection.

On August 2, 2013, Craig/Bednar Law filed a statement of fees and expenses for July 2013 in the sum of $40,744.32 ($39,515.60 for legal services and $1,228,72 for expenses).  Doc. 201.  Pursuant to procedures approved by the Court, 80 percent of fees ($31,612.48) and 100 percent of expenses ($1,228.72) became payable to Craig/Bednar Law absent any objection.  Alger objected to the July 2013 fees because

Sandpoint's budgeted cash flow projections did not support the expenditures.  Doc. 204.

The Court did not rule on this objection.

Craig/Bednar Law did not seek a ruling on its July fees and expenses.  It did not

file a statement of fees and expenses for August 2013 or any other monthly statements

of fees and expenses.

Almost a year later, on June 23, 2014, Craig/Bednar Law filed a Motion to

Withdraw.  In its motion, Craig/Bednar Law explained:

> 2.     From the inception of this case it's been known that virtually all of Sandpoint's assets were encumbered to Alger Cattle Company and/or the Farm Credit Association, although it is believed that there is equity in those assets above the amounts required to retire the claims of those creditors.
>
> 3.     Because of these encumbrances, at the beginning of the case Craig/Bednar requested and received a commitment from one of the Debtor's principals to pay the Firm's fees and expenses on an ongoing basis. Pursuant to that commitment, the principal has periodically made the committed payments during the pendency of the case.
>
> 4.     At the end of March, the outstanding balance exceeded $93,000; the Firm has received $35,000 against that amount and has continued to incur costs and expenses in connection with its representation of the Debtor.
>
> 5.     Despite frequent requests for payment and frequent commitments to make those payments, as of May 31, 2014 the Sandpoint account has an outstanding balance of $74,595.07 for legal fees and expenses incurred on Sandpoint's behalf. Additional fees and expenses have been and will continue to be incurred representing Debtor until such time as Craig/Bednar is authorized to withdraw from Debtor's representation.
>
> 6.     The absence of payment has worked a severe hardship on Craig/Bednar.
>
> 7.     Of the initial retainer received from the Debtor, Craig/Bednar holds $21,665 in its client trust account.  Craig/Bednar will shortly file its periodic Motion for allowance of fees and expenses as required by 11 USC § 503.

Doc. 569.

Craig/Bednar Law did not file its "periodic Motion for allowance of fees and expenses."  See id.  It did not file an application for interim compensation or an amended disclosure of compensation referencing the periodic payments the Sandpoint principal made to Craig/Bednar Law.  It did not identify the Sandpoint principal until it filed its final application for compensation and expenses.

## II.    Discussion

### A.    Standing

Craig/Bednar Law argues, without citing authority, that Sandpoint does not have standing to object to fees because third parties paid a portion of the fees and Sandpoint offered no evidence regarding who paid the fees.  Case No. 14-2052 Doc. 686.

"Standing is a threshold inquiry and jurisdictional prerequisite that must be resolved before reaching the merits of a suit."  City of Kan. City, Mo. v. Yarco Co., Inc., 625 F.3d 1038, 1040 (8th Cir. 2010) (citation omitted) (internal quotation marks omitted).  "The constitutional minimum of standing requires an 'injury in fact,' 'a causal connection between the injury and the conduct complained of,' and a likelihood 'the injury will be redressed by a favorable decision.'" Medalie v. Bayer Corp., 510 F.3d 828, 829 (8th Cir. 2007) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, (1992)).

In this case, Sandpoint alleges it was injured by Craig/Bednar Law's malpractice and nondisclosures.  Sandpoint also claims Craig/Bednar Law's fees are unreasonable and argues it should not have to pay the fees and expenses it allegedly owes Craig/Bednar Law and requests that the Court order disgorgement of the fees it paid.  If the Court approves its application and awards it the full sum of its fee request, Craig/Bednar Law requests the Court also "approve an administrative expense in the

8

amount of $546,176.71, from which Sandpoint will repay the advances from Compher

and Sandpoint Trucking Company.  Doc. 629 at 4.  Therefore, Sandpoint may be

compelled to repay the advances as well as any fees due and owing.  A favorable

decision will redress its alleged injuries.

In addition, section 1109(b) provides:

> A party in interest, including the debtor, the trustee, a creditors' committee,
> an equity security holders' committee, a creditor, and equity security holder,
> or any indenture trustee, may raise and may appear and be heard on any
> issue in a case under this chapter.

11 U.S.C. § 1109(b).  "Section 1109(b) is to be construed broadly, in order to allow

parties affected by a chapter 11 case to appear and be heard."  In re Alpha Nat. Res.

Inc., 544 B.R. 848, 854 (Bankr. E.D. Va. 2016) (citations omitted) (internal quotation

marks omitted).  Generally, "party in interest" under section 1109(b) means "a person

who holds a pecuniary interest that could be adversely affected by the outcome of the

proceeding."[5]  In re U.S. Fidelis, Inc., 481 B.R. 503, 515 (Bankr. E.D. Mo. 2012) (citation

omitted).

Although third parties paid a portion of Craig/Bednar Law's fees, Sandpoint also

paid a portion of the fees, and it will be liable for payment of any remaining balance

approved by the Court.  It may also be obligated to repay the third parties that paid fees

to Craig/Bednar Law on its behalf.  Sandpoint is an interested party because it holds a

pecuniary interest that could be adversely affected by the outcome of the proceeding.[6]

---

[5] "Party in interest" is not defined in 11 U.S.C. § 101.

[6] Similarly, Compher, who joined in Sandpoint's objection, is a party in interest
because he paid a large portion of the fees in this case.

For these reasons, the Court rejects Craig/Bednar Law's argument that Sandpoint lacks standing.

Even if Sandpoint and Compher did not have standing, the Court has an independent duty to review fee applications. In re Premier Healthcare Servs., Inc., 2015 WL 1221975, at *4 (Bankr. D. Minn. Mar. 17, 2015) (citations omitted); In re Nat. Pork Prod. II, LLP, 2013 WL 8351979, at *3 (Bankr. S.D. Iowa Mar. 12, 2013); In re Griffin, 302 B.R. 1, 4 (Bankr. W.D. Ark. 2003); see also Schroeder v. Rouse (In re Redding), 247 B.R. 474, 477 (B.A.P. 8th Cir. 2000) ("Section 329 . . . allows the court to examine the fees paid or payable to a debtor's attorney no matter what the source."). Consequently, analysis of Craig/Bednar Law's application for compensation and expenses is necessary and appropriate.

### B.    Reasonableness

The court next considers whether the fees charged by Craig/Bednar Law exceeded the reasonable value of the services provided, requiring cancellation of the agreement and return of the payments made as provided in section 329(b).  It will also consider whether Craig/Bednar Law's fees and expenses are reasonable and necessary under section 330.

Sandpoint argues that Craig/Bednar Law's charges, which exceed $500,000 including $12,000 for travel expenses, are unreasonable in this case.  Case No. 14-4052 Doc. 687.  Craig/Bednar Law moved to withdraw as counsel for Sandpoint prior to the confirmation of a plan, and Sandpoint incurred the expense of retaining new counsel to get a plan confirmed.  Although Craig testified that Bednar had minimal authority, discretion or experience in bankruptcy law, Craig/Bednar Law billed her time at $250/hour and charged nearly $160,000 for her work.

Sandpoint also asserts that the Court should order disgorgement because Craig and Craig/Bednar Law breached the standard of care resulting in injury to Sandpoint. Id. at 51-52 (citing Belmar v. Garza (In re Belmar), 319 B.R. 748, 759 (Bankr. D.D.C. 2004); In re Henderson, 360 B.R. 477, 488 (Bankr. D.S.C. 2006)).  It argues that, because Craig/Bednar Law's fees were excessive and Sandpoint received no benefit from them, the fees paid to Craig/Bednar Law should be disgorged in their entirety.  Id.

Craig/Bednar Law argues that, even if the Court found Craig negligent, this legal conclusion does not justify or compel disgorgement of all Craig/Bednar Law's fees. Case No. 14-4052 Doc. 686.  It argues that it is not enough for Sandpoint to point to negligence, but rather that it must establish that the fees were unnecessary and excessive—by comparing the amount of compensation to the reasonable value of the services provided.  Id.  Craig/Bednar Law asserts Sandpoint failed to offer any evidence on the issues of excessiveness and necessity.  Id.  Specifically, it offered no expert testimony that Craig/Bednar Law's rates were excessive, that it overbilled or that the work performed (aside from the work related to abandonment) was deficient or excessive.  Further, Craig/Bednar Law asserts it is undisputed that both Craig and Bednar provided significant legal services during the case and that a large portion of the fees incurred by Sandpoint related to motions that did not involve abandonment. Craig/Bednar Law's representation resulted in the Court reducing Alger's claims from a demand of $19 million to claims totaling $9,073,662.77.

"The bankruptcy court has the broad power and discretion to award or deny attorney fees, and, indeed, a duty to examine them for reasonableness."  Tri-State Fin., LLC v. Lovald, 525 F.3d 649, 655 (8th Cir. 2008) (citation omitted) (internal quotation

marks omitted).  Absent compliance with the Bankruptcy Code and Federal Rules of

Bankruptcy Procedure, an attorney has no absolute right to an award of compensation.

Id. (citation omitted) (internal quotation marks omitted).

> Section 329(b):
>
> authorizes the Court to deny compensation to an attorney if the compensation exceeds the reasonable value of the services provided, and, to the extent excessive, order the return of the payment to the estate if the property transferred would have been property of the estate.  "Because § 329 is aimed solely at preventing overreaching by a debtor's attorney . . . a court's consideration of whether to order disgorgement of fees under § 329(b) is limited to the comparison of the amount of compensation received by the attorney with the reasonable value of the services performed."  Schroeder v. Rouse (In re Redding), 247 B.R. 474, 478 (B.A.P. 8th Cir. 2000) (citing In re Benjamin's-Arnolds, Inc., No. 4-90-6127, 1997 WL 86463 (Bankr. D. Minn. 1997)).  In Redding, the Eighth Circuit BAP held that the plain language of § 329 provides there must first be a determination that the fees are excessive, and that only after that determination, and only to the extent excessive, should there be a disgorgement.  Redding, 247 B.R. at 478-79.

In re Pigg, 2015 WL 7424886, at *5 (Bankr. W.D. Mo. Nov. 20, 2015).

Pursuant to section 330(a)(1) of the Bankruptcy Code, the Court may award

reasonable compensation for actual, necessary services rendered by a professional

person employed under section 327.  See 11 U.S.C. § 330(a)(1)(A).  The Court may

also allow reimbursement for actual, necessary expenses incurred by the professional

person.  See 11 U.S.C. § 330(a)(1)(B).  An attorney is a "professional person" under

section 330.  Chamberlain v. Kula (In re Kula), 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997).

The preferred method of determining whether attorney's fees are reasonable is

the lodestar calculation, unless this calculation is inappropriate under the

circumstances.  Id. at 737.[7]  The lodestar method is the calculation of the number of

hours reasonably expended multiplied by a reasonable hourly rate.  Id. at 736;

Stalnaker v. DLC, Ltd., 376 F.3d 819, 825 (8th Cir. 2004).  As part of its analysis, the

Court considers the nature, extent and value of the services provided, taking into

account all relevant factors listed in section 330.  11 U.S.C. § 330(a)(3).

    To the extent not already included in the lodestar analysis and section 330

factors, the Court may also consider the guidelines applied in Johnson v. Georgia

Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) and the cost of

comparable services in non-bankruptcy cases.  Bachman v. Pelofsky (In re Peterson),

251 B.R. 359, 364 (B.A.P. 8th Cir. 2000); In re Kula, 213 B.R. at 739.

    The applicant bears the burden of proving that it is entitled to compensation

under sections 329 and 330 and Federal Rule of Bankruptcy Procedure 2016(a).  In re

Kula, 213 B.R. at 736; Walton v. LaBarge (In re Clark), 223 F.3d 859, 863 (8th Cir.

2000) (citation omitted); In re Home Loan Serv. Corp., 533 B.R. 302, 310 n.8 (Bankr.

N.D. Cal. 2015) (citation omitted); In re Burnett, 450 B.R. 116, 131 (Bankr. E.D. Ark.

2011) (citation omitted).

    On July 22, 2016, the Court entered a Memorandum and Order finding Craig and

Craig/Bednar Law breached the standard of care by:  (1) failing to advise Sandpoint

about the risk that its debt to Alger would be offset by the sum received at a

---

[7] As outlined in In re Kula, the analysis of an attorney fee application starts with
the lodestar calculation.  See id. at 737, 739.  "The bankruptcy court may then make
adjustments to the lodestar amount, in rare and exceptional circumstances, to reflect
that the quality of service rendered and the results obtained were superior or inferior to
what one reasonably should expect in light of the hourly rates charged and the number
of hours expended."  In re Kula, 213 B.R. at 739.

commercially reasonable sale of its abandoned cattle rather than appraised value of the cattle and (2) failing to advise Sandpoint about the risks and benefits of abandonment alternatives.  The Court awarded damages to Sandpoint totaling $1,831,827.63. Sandpoint's malpractice allegations pertain only to work related to abandonment of cattle; it did not allege that Craig or Craig/Bednar Law violated the standard of care by providing advice and representation related to other work.  Neither Sandpoint's nor Craig/Bednar Law's expert witnesses opined about Craig's representation other than as it related to the abandonment issue.

Upon review of Craig/Bednar Law's billing statements, the Court concludes that, aside from the services related to abandonment, the time spent and rates charged by Craig/Bednar Law were reasonable.  Its services were necessary to the administration of the case and beneficial to Sandpoint.  Craig/Bednar Law performed services unrelated to abandonment within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue or task addressed.

According to Craig/Bednar Law's application for compensation (Case No. 14-4052 Doc. 629-7), its fees and expenses related to abandonment total approximately $40,000.  These fees and expenses associated with its breach of the standard of care were not beneficial to the Sandpoint bankruptcy estate and are unreasonable. Therefore, fees and costs totaling $40,000 are disapproved under section 330.

For the reasons listed above, the Court also finds that Craig/Bednar Law's fees and costs related to abandonment of the Sandpoint cattle are excessive and exceed the reasonable value of services performed in the sum of $40,000 under section 329(b).

**C.     Failure to Disclose**

Sandpoint asserts that it is the affirmative duty of any attorney in a bankruptcy

case to fully and completely disclose all fee arrangements and payments and that

Craig/Bednar Law's false statement in its initial disclosure and failure to make

supplemental disclosures when it received payments from third parties should result in

denial of its fee request and disgorgement.  Case No. 14-4052 Doc. 687.  Craig/Bednar

Law asserts Sandpoint did not present any evidence to support its assertion that it failed

to timely disclose payments to the Court.  <u>See</u> Case No. 14-4052 Doc. 688 at 19.

"The provisions of the Bankruptcy Code and the Bankruptcy Rules that regulate

attorney fees are designed to protect both creditors and the debtor against overreaching

attorneys. . . . To ensure such protection, bankruptcy courts have broad and inherent

authority to deny any and all compensation where an attorney fails to satisfy the

requirements of the Code and Rules."  <u>Henderson v. Kisseberth</u> (<u>In re Kisseberth</u>), 273

F.3d 714, 721 (6th Cir. 2001) (citations omitted).

The Bankruptcy Code generally gives a debtor in possession the same rights as

a trustee.  11 U.S.C. § 1107(a).  Section 327(a) therefore gives a debtor in possession,

with court approval, the right to employ counsel to represent it in carrying out its duties

under the Bankruptcy Code.  11 U.S.C. § 327(a).  Section 327(a) requires, however,

that counsel for debtor in possession be "disinterested persons"[8] and not hold or

---

[8] The Code defines "disinterested person" as a person who:

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not, within 2 years before the date of the filing of the
petition, a director, officer, or employee of the debtor; and

represent an interest adverse to the estate.  11 U.S.C. § 327(a).  "This

disinterestedness must be maintained throughout the course of the case to preserve

impartiality in the administration of the bankruptcy estate."  <u>In re Rahe</u>, 178 B.R. 801,

802 (Bankr. D. Neb. 1995).

The selected attorney has the burden of establishing he or she is qualified under

section 327(a) to represent the debtor in possession through its disclosure under Rule

2014(a) and accompanying affidavits.  <u>In re Huntco Inc.</u>, 288 B.R. 229, 232 (Bankr. E.D.

Mo. 2002).  Rule 2014(a) requires the application for employment to include any

proposed arrangement for compensation and any connection the attorney has with the

debtor, creditors and any other party in interest.  Fed. R. Bankr. P. 2014(a).  The duty to

disclose under Rule 2014(a) is a continuing one.  <u>In re US Bentonite, Inc.</u>, 536 B.R. 948,

958 (Bankr. D. Wyo. 2015); <u>In re Huntco Inc.</u>, 288 B.R. at 237 (citation omitted); <u>see</u>

<u>also</u> <u>In re Metro. Env., Inc.</u>, 293 B.R. 871, 887 (Bankr. N.D. Ohio 2003) ("Although no

ongoing disclosure requirement is explicitly set forth in Rule 2014(a), as is the case with

Bankruptcy 2016(b), case law has uniformly held that under Rule 2014(a), (1) full

disclosure is a continuing responsibility, and (2) an attorney is under a duty to promptly

notify the court if any potential for conflict arises.") (footnote omitted).

Section 329 provides:

(a) Any attorney representing a debtor in a case under this title, or in
connection with such a case, whether or not such attorney applies for
compensation under this title, shall file with the court a statement of the

---

(C) does not have an interest materially adverse to the interest of the estate
or of any class of creditors or equity security holders, by reason of any direct
or indirect relationship to, connection with, or interest in, the debtor, or for
any other reason.

11 U.S.C. § 101(14).

compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the estate, if the property transferred—

(A) would have been property of the estate; or

(B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12 or 13 of this title; or

(2) the entity that made such payment.

11 U.S.C. § 329.  The disclosure requirements imposed by section 329 are mandatory, not permissive.  In re Miller Auto. Grp., Inc., 521 B.R. 323, 331 (Bankr. W.D. Mo. 2014). "'Debtor's counsel must lay bare all its dealings . . . regarding compensation. . . . Counsel's fee revelations must be direct and comprehensive.  Coy, or incomplete disclosures . . . are not sufficient.'"  In re Rio Valley Motors Co., LLC, 2007 WL 2492685, at *2 (Bankr. D.N.M. Aug. 29, 2007) (quoting Jensen v. U.S. Trustee (In re Smitty's Truck Stop, Inc.), 210 B.R. 844, 848 (B.A.P. 10th Cir. 1997)).  "A corollary of that requirement is that an application for employment is not complete until the requisite disclosure has been made."  Id.

"The purpose of the disclosure is to allow any party in interest to make an independent judgment about the effect on the estate of any given payment."  In re Miller Auto. Grp., 521 B.R. at 331 (citing In re Rio Valley Motors Co., LLC, 2007 WL 2492685, at *2).  When an attorney or other professional employed under the bankruptcy rules fails to file a sufficiently detailed disclosure, the court and the parties are not provided the information they need to judge whether the Bankruptcy Code's standards are met.

Id. at 331 (citation omitted); In re Rio Valley Motors Co., LLC, 2007 WL 2492685, at *2

(citations omitted); see also Interwest Bus. Equip., Inc. v. United States Trustee (In re

Interwest Bus. Equip., Inc.), 23 F.3d 311, 317 (10th Cir. 1994) ("The applications and

accompanying affidavits in this case do not contain specific facts that would have

enabled the court to rule out the conflicts[.]").

> [I]t is not the court's job to search through the record to find all relevant facts
> relating to an attorney's employment. . . . It is counsel's [or applicant's] duty
> to provide the court with the information necessary to determine whether to
> appoint counsel.

In re Smitty's Truck Stop, 210 B.R. at 849 (citations omitted).  Naturally, the disclosures

must be accurate.  In re Rio Valley Motors Co., LLC, 2007 WL 2492685, at *2.  As the

court in In re Redding stated:

> When an attorney files a bankruptcy case on behalf of a debtor, section 329
> requires the attorney to submit a specific statement of the compensation
> paid or agreed to be paid for the services already rendered or to be rendered
> in connection with the case or, for that matter, merely in "contemplation" of
> the case.  The statement, filed pursuant to the guidelines established by
> Rule 2016 and, in this instance, further delineated by local rule, must be
> filed whether or not the attorney applies for the compensation to be paid
> from property of the estate and whether or not the attorney is in fact paid
> from property of the estate.  **The Code and Rules require, without
> exception, that the amount and source of the compensation be
> disclosed.**

In re Redding, 263 B.R. at 878 (footnotes omitted) (emphasis added).

The procedure for filing the disclosure required by section 329 is specified in

Rule 2016, which states in relevant part:

> (a) *Application for compensation or reimbursement.*  An entity seeking
> interim or final compensation for services, or reimbursement of necessary
> expenses, from the estate shall file an application setting forth a detailed
> statement of (1) the services rendered, time expended and expenses
> incurred, and (2) the amounts requested.  An application for compensation
> shall include a statement as to what payments have theretofore been made
> or promised to the applicant for services rendered or to be rendered in any

capacity whatsoever in connection with the case, [and] the source of the compensation so paid or promised[.]

\* \* \*

(b) *Disclosure of compensation paid or promised to attorney for debtor.* Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code. . . . **A supplemental statement shall be filed and transmitted to the United States trustee within 14 days after any payment or agreement not previously disclosed.**

Fed. R. Bankr. P. 2016 (emphasis added).  Accordingly, whenever an attorney's fee arrangement with a debtor changes or whenever he or she receives a retainer or other form of compensation not previously disclosed, the attorney must file a supplemental disclosure of compensation.

In this case, Craig/Bednar Law received a $25,000 retainer from a third party. Sandpoint's application to employ Craig/Bednar Law represented that Sandpoint paid Craig/Bednar Law's retainer and that Sandpoint may pay fees from the estate or from third parties.  Craig/Bednar Law's disclosure of compensation listed a retainer of $25,000 from the debtor and "Other (specify) – Unknown at this time."  Doc. 13. Craig/Bednar Law received the retainer days before it filed the application to employ and its disclosure of compensation.  Doc. 21 at 4 (noting that Craig/Bednar Law received a wire transfer on January 31, 2013, seven days before Sandpoint filed its petition); Doc. 629 at 2 (noting that Craig/Bednar Law received a check for $25,000 from Sandpoint Trucking Company on January 31, 2013).  Therefore, it knew the retainer was not from Sandpoint and knew (or should have known) who paid it before it filed its disclosure.  Yet Craig/Bednar Law did not disclose that it received the retainer or

any other compensation from Compher or Sandpoint Trucking Company.  It did not amend its application to employ or its disclosure of compensation.

The first time Craig/Bednar Law revealed that third parties paid some of its fees and expenses was in its motion to withdraw filed in June 2014.  In this motion, Craig/Bednar Law acknowledged that it requested and accepted funds from Sandpoint's principals to pay its fees and expenses because Sandpoint's assets were encumbered by liens filed by Alger and the Farm Credit Association.  Doc. 569.  It did not list the total sum paid by third parties or identify the Sandpoint principals.  In its motion to withdraw, Craig/Bednar Law falsely represented that Debtor paid its retainer.  Doc. 569 at 2.

It was not until its final application for allowance of compensation and reimbursement of expenses that the Court learned Craig/Bednar Law received the $25,000 retainer from Sandpoint Trucking Company and accepted $109,498.14 from Sandpoint, $309,680.00 from Compher and $65,000 from Sandpoint Trucking Company for payment of legal fees and costs.  Doc. 629.  This information was particularly surprising because Craig/Bednar Law stopped filing monthly fee and expense statements pursuant to the approved procedures for interim compensation and reimbursement of professional fees in August 2013.  Due to the limited number of monthly fee and expense statements it filed and disputes regarding Craig/Bednar Law's fees, the Court approved only $83,680.94 of the fees and expenses paid to

Craig/Bednar Law by order or by default through the interim procedures.[9]

Consequently, Craig/Bednar Law accepted over $400,000 from Sandpoint and third

parties without Court approval.

Craig/Bednar Law carries the burden of proving it is qualified under section 327,

it is entitled to compensation under section 330 and its fees are reasonable.  It did not

offer evidence showing when specific payments were received and who paid them.

Craig/Bednar Law did not offer evidence regarding the "commitment" it received from

"one of Debtor's principals to pay the Firm's fees and expenses on an ongoing basis."

Doc. 569.  Likewise, it did not offer evidence regarding its compensation arrangement

with Sandpoint, Compher or Sandpoint Trucking Company.  It did not ensure that

Sandpoint filed a motion to obtain credit from third parties to pay fees and expenses yet

it characterized the payments from Compher and Sandpoint Trucking as "advances" in

the application for compensation.  Doc. 629.  Most importantly, Craig/Bednar Law did

not disclose or offer any evidence showing that it remained disinterested or that no

conflicts of interest arose during its representation of Sandpoint.

> When an attorney unilaterally elects to conceal the existence of payments
> that might otherwise be subject to examination by creditors and the court,
> the entire compensation review process is derailed and public confidence
> in the system is damaged.  The failure to disclose is a breach of the duty of
> candor to the tribunal.  It implicates Bankruptcy Rule 9011.  Because of the
> importance of this process, a bankruptcy court retains the power, authority,

---

[9] The only fees and expenses the Court approved through its orders or
Craig/Bednar Law's compliance with the interim compensation and expense
reimbursement procedures are:

$25,000.00  + 1,314.91 = 26,314.91 (March)
8,668.00 + 237.98 = 8,905.98 (April)
24,387.20 + 220.78 = 24,607.98 (May)
22,566.40 + 1,285.67 = 23,852.07 (June)
Total = $83,680.94

and duty to police the disclosure and reporting requirements set forth in the Bankruptcy Code and Rules with its sanctioning powers, including the power to order the disgorgement of all sums received by counsel and the forfeiture of all compensation paid to counsel in a particular case.

* * *

Disclosure is what enables a bankruptcy court and parties to examine and identify potential issues with fee agreements before, or soon after, such agreements are actually consummated. Upon reviewing disclosures, the bankruptcy court may, where appropriate, order the return of compensation that exceeds the reasonable value of such services. Moreover, in reviewing fee arrangements, a bankruptcy court can ascertain potential conflicts of interest . . . and address any issues as necessary. Thus, disclosure enables a court to review not only whether the fee arrangement itself is **reasonable in terms of value,** but also whether the services provided by debtor's counsel were **"untainted" by third-party influences.**

In re Fair, 2016 WL 3027264, at *13-*15 (Bankr. N.D. Tex. May 18, 2016) (footnotes

omitted) (emphasis in original).

Compher testified that he paid Craig/Bednar Law's $25,000 retainer.  He also

paid more than half of Craig/Bednar Law's expenses and fees.  Compher's payments to

Craig/Bednar Law to represent Sandpoint raise significant concerns regarding whether

Craig/Bednar Law and its attorneys were disinterested and whether they were

representing a person with adverse interests to Sandpoint.

An attorney who represents a debtor owes allegiance to the debtor, and not to its stockholders, officers or directors.  Hansen, Jones & Leta, P.C. v. Segal, 220 B.R. 434, 469 (D. Utah 1998).  However, given human nature, it is also clear that an attorney's loyalty to her client may be strained if the attorney's fees do not come from the client, but instead come from a third-party. As explained by the court in In re Hathaway Ranch Partnership:

Third parties do not transfer property or funds to an attorney to represent a debtor in possession unless that representation is in the best interest of the third party. It is often the case that the interests of the third party are not identical to the interests of the debtor in possession in its role as fiduciary of the bankruptcy estate. Thus by accepting payment from a third party, the proposed counsel for the debtor in possession

22

> necessarily has a conflict of interest in that counsel is serving
> two masters—the one who paid counsel and the one counsel
> is paid to represent.

116 B.R. 208, 219 (Bankr. C.D. Cal. 1990).

In re Metro. Envtl., 293 B.R. 871, 883 (Bankr. N.D. Ohio 2003); see also Sickler v. Kirby,

805 N.W.2d 675, 689 (Neb. Ct. App. 2011).

Compher is a voting member of Sandpoint who held a significant interest in

Sandpoint that grew throughout Craig/Bednar Law's representation of Sandpoint. It was

apparent at trial that Compher exercised substantial influence over Widdowson and

other investors. At the January 2016 trial, Craig testified that his "most frequent contact"

was with Compher. He recalled discussing various business plan options with

Sandpoint principals, including John Widdowson and Compher. Although Widdowson

was Sandpoint's sole managing member and one of only two people on its Board of

Managers, Compher apparently retained the power to reject Widdowson's suggestions

about Sandpoint's operations. During discussions about Sandpoint's business plan

options and bankruptcy exit strategy, Widdowson suggested Sandpoint "bring in"

another rancher from Oklahoma or find an investor who would agree to a sale and

lease-back. Compher rejected both of these ideas. Craig testified that Sandpoint

representatives also spoke about a large cattle sale, but this idea was rejected as well.

Craig recalled Compher complaining that Widdowson suggested reorganization ideas

but that Widdowson did not consider costs such as moving cattle or renting land.

The evidence received at the January 2016 trial shows that Compher received a

$201,667 payment from Sandpoint less than 60 days before it petitioned for bankruptcy

relief. The Court received no evidence regarding whether Sandpoint pursued this

potential preferential payment.

At the very minimum, this evidence regarding Compher's influence on Sandpoint's decision-making suggests that Craig's and Bednar's loyalties to Sandpoint were strained and possibly compromised. "[A]ny 'interest or relationship that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules' needs to be disclosed." In re Rio Valley Motors Co., LLC, 2007 WL 2492685, at *3 (quoting In re Cook, 223 B.R. at 789).

The Court did not receive sufficient information to thoroughly explore the conflict of interest or disinterestedness issues, which is precisely why the Bankruptcy Code and rules impose a duty to disclose: "to allow any party in interest to make an independent judgment about the effect on the estate of any given payment." Id. at *2. Craig/Bednar Law's disclosure did not allow a party in interest to make at least an initial determination about the identity of the payor or the relationship of the payor to the debtor, the estate or the professional. See id. (stating that identifying a payor as "Third Party" and "a person not a Creditor" is insufficient). Craig/Bednar Law's disclosure did not make clear whether any portion of the retainer paid by "Unknown at this time" meant a person that made a gift to Sandpoint by advancing the funds without expecting repayment or a person who became a creditor by advancing the funds with an expectation of repayment from Sandpoint as the application for compensation suggests. The disclosure, which Craig/Bednar Law neglected to amend even after it withdrew as counsel, did not reveal that it received the majority of its compensation from third parties. Craig/Bednar Law failed to comply with section 329 and Rules 2014 and 2016.

Craig/Bednar Law also failed to comply with the interim compensation and reimbursement of expenses procedures. Although the Court approved these

procedures, only a portion of the fees and expenses Craig/Bednar Law collected were consistent with these procedures.  The payments that were not consistent with the established procedures were in violation of section 329 and Rule 2016.  See In re Jeanes, 2004 WL 1718093, at *3 (Bankr. N.D. Iowa June 17, 2004) ("Whenever an attorney's fee arrangement with a debtor changes, Rule 2016(b) requires that the attorney file a supplemental disclosure statement.") (citation omitted).

In summary, Craig/Bednar Law violated the Code and Rules by failing to properly disclose the true details of the retainer, its compensation arrangements with third parties and many of the postpetition payments it received from Sandpoint and third parties. Rather, it accepted payments for fees and expenses without proper disclosure, application, notice to parties and Court approval.  Craig/Bednar Law received postpetition payments from Compher and Sandpoint Trucking Company without seeking court authorization to obtain credit or disclosure regarding the source of these payments.  It did not file a fee application until August 27, 2014.  It made no real attempt to explain its disregard of the Code and Rules.  Further, Craig/Bednar Law's failure to disclose was not a "technical breach"—it never amended its disclosure.  Craig has represented debtors in Chapter 11 bankruptcy cases for more than 30 years and knows or should know the statutes and rules applicable to attorney compensation.  These observations suggest an intent to hide the existence of Craig/Bednar Law's fee arrangements with third parties.  Craig/Bednar Law disregarded its duties under the Code and the Rules.  Accordingly, sanctions are appropriate.

### D.    Sanctions

"It is well settled that disgorgement of fees is an appropriate sanction for failure to comply with the disclosure requirements of section 329 and Rule 2016.  Indeed, the

Courts of Appeal which have addressed this and similar disclosure issues are emphatic in affirming the grant of sanctions." In re Redding, 263 B.R. at 880 (citing In re Indep. Eng'g Co., 197 F.3d 13 (1st Cir. 1999)) (upholding a lower court's denial of all fees upon failure to disclose draws on retainer despite the assertion that the retainer was not estate property).[10] The decision to reduce fees, deny fees or order disgorgement of fees under section 329 is within the sound discretion of the bankruptcy court. In re Miller Auto. Grp., Inc., 521 B.R. 323, 324 (Bankr. W.D. Mo. 2014) (citing In re Sullivan's Jewelry, Inc., 226 B.R. 624, 627 (B.A.P. 8th Cir. 1998); In re Coones Ranch, 7 F.3d 740, 744 (8th Cir. 1993)).

> Bankruptcy courts generally have substantial discretion in fashioning sanctions; however, they must exercise that power with restraint and the sanction imposed must be commensurate with the egregiousness of the conduct. Downs, 103 F.3d at 478. The Court may exercise its discretion

---

[10] See also In re Kisseberth, 273 F.3d at 720 (finding that an attorney's "failure to disclose his fees justifies the amount of disgorgement regardless of the degree to which his fees were excessive"); Kravit v. Michel (In re Crivello), 134 F.3d 831, 839 (7th Cir. 1998) ("We believe a bankruptcy court should punish a willful failure to disclose the connections required by Fed. R. Bankr. P. 2014 as severely as an attempt to put forth a fraud upon the court."); Law Offices of Nicholas A. Franke v. Tiffany (In re Lewis), 113 F.3d 1040 (9th Cir. 1997) (holding that a bankruptcy court is not required to determine whether fees are reasonable before ordering disgorgement of postpetition fees and that all postpetition fees were properly required to be disgorged upon failure to supplement initial disclosure); Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477-78 (6th Cir. 1996) (disgorgement and denial of fees affirmed: "In cases involving an attorney's failure to disclose his fee arrangement under § 329 or Rule 2016, however, the **courts have consistently denied all fees**.") (citations omitted) (emphasis added); Arens v. Boughton (In re Prudhomme), 43 F.3d 1000 (5th Cir. 1995) (holding that the entire $75,000 prepetition retainer was properly ordered disgorged upon finding a pattern of nondisclosure); Turner v. Davis, Gillenwater & Lynch (In re Inv. Bankers, Inc.), 4 F.3d 1556, 1566 (10th Cir. 1993) (holding that the failure to disclose compensation results in forfeiture of any right to compensation and that prejudgment interest on fee disgorgement may be ordered); Futuronics Corp. v. Arutt, Nachamie & Benjamin (In re Futuronics Corp.), 655 F.2d 463 (2d Cir. 1981); cf. In re Clark, 223 F.3d 859 (8th Cir. 2000); Schwartz v. Kujawa (In re Kujawa), 256 B.R. 598 (B.A.P. 8th Cir. 2000) (upholding an award of $100,000 in sanctions plus disgorgement of $78,409 in attorneys' fees)).

and deny or reduce fees for counsel's failure to disclose his fee arrangements, whether or not actual harm accrues to the estate.  In re Central Florida Metal Fabrication, Inc., 207 B.R. 742, 749 (Bankr. N.D. Fla. 1997).  "The disclosure requirements impose upon attorneys an independent responsibility.  Thus, failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule."  In re Woodfield Gardens Associates, 1998 WL 276453 (Bankr. N.D. Ill.).  A failure or refusal to disclose fee payments has long been recognized as a sufficient basis for an attorney's disqualification or for disgorgement of fees.  In re Keller Financial Services of Florida, Inc., 248 B.R. 859, 886 (Bankr. M.D. Fla. 2000); In re Independent Engineering Co., Inc., 232 B.R. 529, 532 (1st Cir. BAP 1999); In re Envirodyne Industries, Inc., 150 B.R. 1008 (Bankr. N.D. Ill. 1993); In re Dixon, 143 B.R. 671, 680 (Bankr. N.D. Tex. 1992).

In re Redding, 251 B.R. 547, 552-53 (Bankr. W.D. Mo. 2000) (footnote omitted).  Filing incomplete or inaccurate disclosures also may be grounds for sanctions, including disgorgement.  In re Pigg, 2015 WL 7424886, at *2 n.7 (citing In re Clark, 223 F.3d 859, 863 (8th Cir. 2000); In re Redding, 265 B.R. 601).

Although bankruptcy courts may exercise discretion to award or deny fees for failure to disclose, they should deny them when an attorney fails to comply with the Bankruptcy Code and rules.

The Eighth Circuit Court of Appeals has held that, where a debtor's attorney has failed to comply with the statute and the rules, subsequent fee applications "**should** be denied and the funds received **should** be ordered returned to the estate." Lavender v. Wood Law Firm, 785 F.2d 247, 248 (8th Cir. 1986) (emphasis added).  It is worthy of note that the Eighth Circuit used the word should and not the word may, thereby giving a strong indication that disgorgement of the fees received is the expected and proper remedy to be applied. See also, In re Downs, 103 F.3d 472, 479 (6th Cir. 1996) ("[T]he bankruptcy court should deny all compensation to an attorney who exhibits a willful disregard of his fiduciary obligations to fully disclose the nature and circumstances of his fee arrangement under § 329 and Rule 2016.  The authority to do so is inherent, and in the face of such infractions should be wielded forcefully."); Matter of Prudhomme, 43 F.3d 1000, 1003 (5th Cir. 1995) ("[T]he court's broad discretion in awarding and denying fees paid in connection with bankruptcy proceedings empowers the bankruptcy court to order disgorgement as a sanction to debtors' counsel for nondisclosure."); In re Westside Creek Limited Partnership, 93 B.R. 177,

180-81 (Bankr. E.D. Ark. 1988) ("Failure of attorney to comply with the requirement of the Bankruptcy Code to obtain prior court approval is a basis for ordering the estate to be reimbursed for fees improperly received.").

In re Redding, 251 B.R. at 552.

It is also well settled that a bankruptcy court may order disgorgement of a retainer paid by a third party if an attorney violates rules requiring disclosure of fees.  In re Miller Auto. Grp., Inc., 521 B.R. at 333; In re Stevenson, 2011 WL 2413172, *5 (Bankr. D. Ariz.  June 9, 2011); In re W.T. Mayfield Sons Trucking Co., Inc., 225 B.R. 818, 827 (Bankr. N.D. Ga. 1998).  Similarly, a bankruptcy court may disgorge fees and expenses paid by a third party.  See generally In re Kisseberth, 273 F.3d at 721-22.

Craig/Bednar Law argues that the Court may deny fees or order disgorgement only to the extent fees are excessive.  Case No. 14-4052 Doc. 686 at 66.  This argument is persuasive if the Court is considering the reasonableness of fees under section 329(b).  Craig/Bednar Law's failure to disclose is a violation of section 329(a) as well.  Its failure to file a complete and accurate disclosure justifies disgorgement regardless whether its fees were excessive.  See In re Woodcraft Studios, Inc., 464 B.R. 1, 10 (Bankr. N.D. Cal. 2011) (stating that "a finding of excessiveness under section 329 is not a necessary predicate to disgorgement or denial of fees"); In re Jackson, 401 B.R. 333, 341 (Bankr. N.D. Ill. 2009) (holding that a finding of excessiveness under section 329(b) is unnecessary when a debtor's improper disclosure requires disgorgement); In re Kisseberth, 273 F.3d at 720 (finding that an attorney's "failure to disclose his fees justifies the amount of disgorgement regardless of the degree to which his fees were excessive"); In re Lewis, 113 F.3d at 1046 (holding that a bankruptcy court is not required to determine whether fees are reasonable before ordering disgorgement of postpetition fees and that all postpetition fees were properly

required to be disgorged upon failure to supplement initial disclosure).  Under section

329(a), even a negligent or inadvertent failure to disclose as required by section 329

and Rules 2016 and 2017 may result in denial of fees or an order of disgorgement.  In

re Kisseberth, 273 F.3d at 721 (citing In re Park-Helena Corp., 63 F.3d at 882); In re

Miller Auto. Grp., 521 B.R. at 331; In re Rio Valley Motors Co., LLC, 2007 WL 2492685,

at *2.

The circumstances of this case raise difficult issues that trouble the Court.  On

one hand, Craig/Bednar Law ignored the disclosure requirements and complied with the

interim compensation and reimbursement of professional expenses procedures only

until August 2013.  This conduct shows an utter disregard for these requirements.

On the other hand, except for legal serves related to abandonment of Sandpoint

cattle, Craig/Bednar Law provided legal services that proved valuable to the estate.

Craig/Bednar Law was successful in offering legal advice and litigation services that

resulted in a reduction of Alger's claims from an alleged $19 million to $9,073,662.77.

Case No. 14-4052 Doc. 610.  It also successfully represented Sandpoint in cash

collateral motions.  The Court granted five out of six motions filed.  Id.  The docket and

fee application show numerous motions and tasks unrelated to abandonment.

Sandpoint did not argue that this work was deficient or unnecessary.  The fee rate

charged appears reasonable based on the customary compensation charged by

comparably skilled practitioners in Nebraska.  Craig/Bednar Law's services unrelated to

abandonment were reasonable and beneficial to the estate.

Although there is ample support for disapproving and ordering disgorgement of

all compensation paid to Craig/Bednar Law during its representation of Sandpoint,

disapproval of fees and costs in excess of $540,000 and disgorgement in excess of

$484,000 when the majority of these fees were beneficial to the estate is inequitable.

Consequently, the Court will impose a more proportional sanction and disapprove less

than the total fees earned.

Craig/Bednar Law's failure to disclose the identity of, its compensation

arrangements with and its payments from third parties until its final application for

compensation and reimbursement of expenses is its most egregious violation.  Based

on Craig/Bednar Law's misrepresentations regarding the source of the retainer that it

failed to clarify or correct until its final application for compensation and expenses,

Craig/Bednar Law is ordered to refund and disgorge the $25,000 retainer.  Craig/Bednar

Law is also ordered to disgorge all payments it received from third parties.  Finally, the

Court disapproves all Craig/Bednar Law's fees and costs related to abandonment of

Sandpoint cattle, which total approximately $40,000.

The Court recognizes that this sanction is harsh, but finds that a lesser penalty

would require the Court to overlook Craig/Bednar Law's blatant disregard of the

Bankruptcy Code and the rules and implicitly authorize this conduct.  Craig/Bednar

Law's failure to properly disclose and amend its disclosures when necessary compel

severe sanctions.

## III.    Conclusion

Accordingly, for the reasons stated, IT IS ORDERED that:

1.  Craig/Bednar Law's Final Application for Allowance of Compensation and

    Reimbursement of Expenses is APPROVED in part and DISAPPROVED in

    part.  Craig/Bednar Law's fees and costs related to the abandonment of

    Sandpoint's cattle, which the Court finds total $40,000, are disapproved.

To the extent Craig/Bednar Law's compensation was paid by a third party, its fees are disapproved.  All other fees and expenses are approved.

2. Craig/Bednar Law is ordered to disgorge (or refund to the extent it still holds part of the retainer in its trust account) the $25,000 retainer to Sandpoint, Sandpoint Trucking Company, LLC or Clark A. Compher, Jr.[11]

3. Craig/Bednar Law is ordered to disgorge:

   a. $309,680.00 to Clark A. Compher, Jr.; and

   b. $65,000 to Sandpoint Trucking Company, LLC.

The Court considered all other arguments and concludes they are without merit.

Dated: July 28, 2016.

Shon Hastings, Judge
United States Bankruptcy Court
Sitting By Designation

---

[11] The Court will schedule an evidentiary hearing to determine whether the $25,000 retainer should be returned to Sandpoint, Sandpoint Trucking Company or Compher.  If the parties provide a stipulation designating the recipient of the disgorgement within seven days of the entry of this order, the Court will cancel the hearing and enter an appropriate order and judgment.